IN THE
UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MARYLAND

TYSON FOSHEE
233 Rustling Leaf Place
Kearneysville, WV 25430

ANTHONY FULLER
19420 Portsmouth Drive
Hagerstown, MD 21742

NATHAN HAMMOND
4510 Mt. Carmel Road
Hampstead, MD 21074

PAUL MILLER
205 Highland Road
Bel Air, MD 21014

GARY PEARSON
1000 Longview Drive
Berkeley Springs, WV 25411

NICHOLAS PIVAR
433 Misty Meadows Lane
Augusta, WV 26704

ROBERT ROGERS
1295 Stone Road
Westminster, MD 21158

DIANA RUGGERI
1603 Porter Creek Court

1

Mt. Airy, MD 21771

MARK SMITH
20502 Trovinger Mill Road
Hagerstown, MD 21742

   *Plaintiffs,*

              Civil Action No:

vs.

ASTRAZENECA PHARMACEUTICALS LP
636 Research Court
Frederick, MD 21703

   Resident Agent:
   THE CORPORATION TRUST, INC.
   2405 York Road, Suite 201
   Lutherville-Timonium, MD 21093-2264,

   *Defendant.*

-o0o-
### COMPLAINT
(Jury Trial Requested)

 Plaintiffs Tyson Foshee, Anthony Fuller, Nathan Hammond, Paul Miller, Gary Pearson, Nicholas Pivar, Robert Rogers, Diana Ruggeri, and Mark Smith, by and through their attorneys, Francis J. Collins and Kahn, Smith and Collins, P.A., hereby sue Defendant AstraZeneca Pharmaceuticals LP, and, in support thereof, state as follows:

2

## I. INTRODUCTION

1.      This is a case related to the termination of a group of employees of AstraZeneca Pharmaceuticals LP (hereinafter "AstraZeneca") because the employees refused to comply with a COVID-19 vaccine mandate.

2.      Plaintiff Tyson Foshee (hereinafter "Foshee") was an employee of AstraZeneca.  He began employment there in August 2014.  At the time of his termination, Foshee held the title of Lab Services Lead Technician.

3.      Plaintiff Anthony Fuller (hereinafter "Fuller") was an employee of AstraZeneca.  He began employment there in October 2018.  At the time of his termination, Fuller held the title of Lead HVAC Mechanic.

4.      Plaintiff Nathan Hammond (hereinafter "Hammond") was an employee of AstraZeneca.  He began employment there as a contractor in January 2021 and then as a full-time employee in August 2021.  At the time of his termination, Hammond held the title of Alarm Management/Facilities and Equipment Technician.

5.      Plaintiff Paul Miller (hereinafter "Miller") was an employee of AstraZeneca.  He began employment there in March 2021.  At the time of his forced resignation, Miller held the title of Facilities Technician IV – Electrician.

6.     Plaintiff Gary Pearson (hereinafter "Pearson") was an employee of AstraZeneca.  He began employment there in April 2019.  At the time of his termination, Pearson held the title of HVAC Lead.

7.     Plaintiff Nicholas Pivar (hereinafter "Pivar") was an employee of AstraZeneca.  He began employment in December 2018.  At the time of his termination, Pivar held the title of Facilities Supervisor.

8.     Plaintiff Robert Rogers (hereinafter "Rogers") was an employee of AstraZeneca.  He began employment there in October 2019.  At the time of his forced resignation, Rogers held the title of Lead Electrical Technician.

9.     Plaintiff Diana Ruggeri (hereinafter "Ruggeri") was an employee of AstraZeneca.  She began employment there in May 2019.  At the time of her termination, Ruggeri held the title of Site Services Operations Manager.

10.     Plaintiff Mark Smith (hereinafter "Smith") was an employee of AstraZeneca.  He began employment there in November 2012.  At the time of his termination, Smith held the title of Process Mechanic III.

11.     In an August 2021 email to its employees, AstraZeneca instituted a company-wide vaccine mandate.  The email said, in part: "We will provide accommodations for employees unable to be vaccinated for medical, religious, or other restrictions.  For these colleagues, COVID-19 testing will be **required** a minimum of once per week." Under the terms of its mandate, AstraZeneca required

employees to login to Workday and either confirm vaccination (no proof required) or, if an employee was not vaccinated, had the option of selecting "religious," "medical," or "other" as the reason.

12.     On January 31, 2022, AstraZeneca sent an email to its employees mandating vaccination again, but this time requiring employees to upload proof of vaccination or proof of an approved medical or religious exemption.  A follow-up email on Feb. 10, 2022, announced the deadline for employees to submit an exemption request was Feb. 28, 2022.

13.     After the announcement, Plaintiffs Foshee, Fuller, Pivar, Ruggeri, and Smith sought reasonable accommodations of their religious practices.  AstraZeneca refused to grant the exemption in direct violation of Title VII of the Civil Rights Act of 1964.

14.     After the announcement, Plaintiff Hammond sought reasonable accommodations for his disabilities.  AstraZeneca refused to grant the exemption in direct violation of the Americans with Disabilities Act ("ADA").

15.     In implementing and enforcing its mandate, AstraZeneca subjected Plaintiffs Foshee, Fuller, Hammond, Miller, Pearson, Pivar, Rogers, Ruggeri, and Smith to unlawful medical inquiries and examinations under the ADA.

## II. JURISDICTION

16.     Plaintiffs have fulfilled the jurisdictional requirements of Title VII and

5

the ADA, by filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving a Right to Sue letter from the EEOC for each charge, in compliance with 42 U.S.C. § 2000e-5(f)(1) and §12117(a).

17.     AstraZeneca is subject to the provisions of Title VII and the ADA, as it employs more than fifteen employees under 42 U.S.C. § 2000e(b) and 42 U.S.C. § 12111(5)(A).

18.     This Court has original subject matter jurisdiction over this action, as the claims therein arise under the Constitution and the laws of the United States, pursuant to 28 U.S.C. § 1331.   This Court has personal jurisdiction over AstraZeneca, as AstraZeneca transacts business and contracts to supply services in the District of Maryland, in keeping with Fed. Rule Civ. Pro. 4(k)(1)(A) and Md. Code § 6-103(b)(1) and (2), and as the exercise of this Court's jurisdiction in this case would comport with the due process requirement of the Fourteenth Amendment of the United States Constitution. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

19.     Venue is proper in the District of Maryland under 28 U.S.C. § 1391(b)(2) and (3), because all the events or omissions giving rise to this claim occurred in Maryland, and because AstraZeneca is subject to this Court's personal jurisdiction with respect to this action.

### III. PARTIES

6

20.     Plaintiffs were at all relevant times employees of AstraZeneca until they were fired or constructively terminated on or about April 29, 2022.

21.     AstraZeneca is a global biopharmaceutical business with multiple locations in the United States.  AstraZeneca is a Delaware corporation with locations in Frederick, Maryland and Gaithersburg, Maryland.  Plaintiffs were employed at AstraZeneca's Frederick location.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

22.     In August of 2022, Foshee filed a timely Charge of Discrimination against AstraZeneca with the Philadelphia District Field Office of the EEOC, Charge No. 531-2022-02326, charging it with unlawful religious discrimination in connection with his termination.

23.     By notice dated January 3, 2023, Foshee received a "Notice of Right to Sue" letter from the EEOC (Ex. 1).

24.     In February of 2023, Foshee filed an additional Charge of Discrimination against AstraZeneca with the Baltimore Field Office of the EEOC, Charge No. 531-2023-01926, charging it with unlawful disability discrimination in connection with his termination.

25.     By notice dated March 10, 2023, Foshee received a "Notice of Right to Sue" letter from the EEOC (Ex. 2).

7

26.     In February of 2023, Fuller filed a timely Charge of Discrimination against AstraZeneca with the Baltimore Field Office of the EEOC, Charge No. 531-2023-02020, charging it with unlawful religious and disability discrimination in connection with his termination.

27.     By notice dated March 10, 2023, Fuller received a "Notice of Right to Sue" letter from the EEOC (Ex. 3).

28.     In February of 2023, Hammond filed a timely Charge of Discrimination against AstraZeneca with the Baltimore Field Office of the EEOC, Charge No. 531-2023-02054, charging it with unlawful disability discrimination in connection with his termination.

29.     By notice dated March 22, 2023, Hammond received a "Notice of Right to Sue" letter from the EEOC (Ex. 4).

30.     In February of 2023, Miller filed a timely Charge of Discrimination against AstraZeneca with the Baltimore Field Office of the EEOC, Charge No. 531-2023-02053, charging it with unlawful disability discrimination in connection with his constructive termination.

31.     By notice dated March 22, 2023, Miller received a "Notice of Right to Sue" letter from the EEOC (Ex. 5).

32.     In February of 2023, Pearson filed a timely Charge of Discrimination against AstraZeneca with the Baltimore Field Office of the EEOC, Charge No. 531-

2023-02048, charging it with unlawful disability discrimination in connection with his termination.

33.     By notice dated March 22, 2023, Pearson received a "Notice of Right to Sue" letter from the EEOC (Ex. 6).

34.     In July of 2022, Pivar filed a timely Charge of Discrimination against AstraZeneca with the Baltimore Field Office of the EEOC, Charge No. 530-2022-03923, charging it with unlawful religious discrimination in connection with his termination.  In January of 2023, Pivar amended his Charge of Discrimination to include disability discrimination.

35.     By notice dated March 10, 2023, Pivar received a "Notice of Right to Sue" letter from the EEOC (Ex. 7).

36.     In February of 2023, Rogers filed a timely Charge of Discrimination against AstraZeneca with the Baltimore Field Office of the EEOC, Charge No. 531-2023-02206, charging it with unlawful disability discrimination in connection with his constructive termination.

37.     By notice dated March 22, 2023, Rogers received a "Notice of Right to Sue" letter from the EEOC (Ex. 8).

38.     In February of 2023, Ruggeri filed a timely Charge of Discrimination against AstraZeneca with the Baltimore Field Office of the EEOC, Charge No. 531-

2023-02021, charging it with unlawful religious and disability discrimination in connection with her termination.

39.     By notice dated March 22, 2023, Ruggeri received a "Notice of Right to Sue" letter from the EEOC (Ex. 9).

40.     In August of 2022, Smith filed a timely Charge of Discrimination against AstraZeneca with the Baltimore Field Office of the EEOC, Charge No. 531-2022-02405, charging it with unlawful religious discrimination in connection with his termination.  In March of 2023, Smith amended his Charge of Discrimination to include disability discrimination.

41.     By notice dated March 28, 2023, Smith received a "Notice of Right to Sue" letter from the EEOC (Ex. 10).

42.     This lawsuit has been timely filed within 90 days of Plaintiffs' receipt of the EEOC's Right to Sue Notices.

## V. FACTUAL ALLEGATIONS

### A. AstraZeneca's Vaccine Mandate

43.     In an August 2021 email to its employees, AstraZeneca instituted a company-wide vaccine mandate.  The email said, in part: "We will provide accommodations for employees unable to be vaccinated for medical, religious, or other restrictions.  For these colleagues, COVID-19 testing will be **required** a minimum of once per week."  Under the terms of its mandate, AstraZeneca required

employees to login to Workday and either confirm vaccination (no proof required) or if an employee was not vaccinated, had the option of selecting "religious," "medical," or "other" as the reason.

44.    On January 31, 2022, AstraZeneca sent an email to its employees mandating vaccination again, but this time requiring employees to upload proof of vaccination or proof of an approved medical or religious exemption.  A follow-up email on Feb. 10, 2022, announced the deadline for employees to submit an exemption request was Feb. 28, 2022.  The policy required unvaccinated employees to upload proof of vaccination no later than March 31, 2022.  If AstraZeneca granted an employee's request, the employee could submit proof thereof to Workday to fulfill the requirements of the new policy.

### B. Requests for Religious Exemption

45.    Plaintiffs Foshee, Fuller, Pivar, Ruggeri, and Smith requested to be exempt from the vaccine mandate, as a reasonable accommodation of their sincerely held religious beliefs.

46.    These Plaintiffs were willing to engage in disease mitigation measures such as masking, social distancing, remote working, or such other measures requested by AstraZeneca.  They were not willing to submit to a COVID-19 vaccine but were willing to consider any other reasonable requests by AstraZeneca.

47.     Plaintiffs Foshee, Fuller, Pivar, Ruggeri, and Smith submitted their request on forms provided by AstraZeneca.   The Reasonable Accommodation Request Form contained a clause that stated:

> Completion of this form is the first step in an interactive process between you and AstraZeneca to determine whether you are qualified for a reasonable accommodation and further whether there are any available accommodations that would enable you to perform your job (or enjoy equal access to benefits and privileges of employment) and meet our operational and safety needs.

48.     This clause oversteps AstraZeneca's authority.   The interactive process is not intended to question the validity of one's religious beliefs, but to discuss possible accommodations to the religious request.   An employer may inquire further into an employee's beliefs, only if there is an objective basis for believing that the employee's beliefs are not sincere.   *See* U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2021-3,     Section     12:     Religious     Discrimination     (2021), https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftn221.

49.     AstraZeneca only followed up with three Plaintiffs (Foshee, Pivar, and Smith) regarding their religious beliefs.

50.     Plaintiff Foshee was asked follow-up questions regarding his religious beliefs.   Despite clear guidance from EEOC and caselaw, AstraZeneca inquired about Foshee's religious denomination, church he attends, and number of years he has been a member, among other things.   Because the follow-up questions merely

reworded questions he already answered in his initial exemption request, Foshee responded to the follow-up inquiry by providing another copy of his initial request. Those answers more than satisfied the follow-up questioning submitted by AstraZeneca.

51.    Plaintiff Pivar was also asked a follow-up question regarding his religious beliefs.    Specifically, he was asked to "[p]lease describe any teachings/tenets of your religion that specifically relate to vaccination."  In his original accommodation request, Pivar had already described his sincerely held belief that required accommodation from the vaccine mandate.  However, he elected to answer the redundant follow-up question anyway, explaining in great detail the core of his beliefs and his intimate relationship with the Holy Spirit, including how it guides his decision-making.  Somehow, this answer did not satisfy AstraZeneca, and it denied his exemption with no objective basis for questioning his beliefs.

52.    Plaintiff Smith was asked if, while he has held his religious beliefs, had he ever smoked cigarettes, consumed alcohol, received any tattoos or used legal recreational drugs.  Besides being an invasion of privacy, this type of questioning was designed with the clear intention of catching Smith in some sort of contradiction. Smith, however, still responded to the intrusive question.  In doing so, he quoted Bible verses and eloquently explained the difference between the substances mentioned in AstraZeneca's question and submitting to a vaccination.  He also

added, on the topic of tattoos, that he had spoken with his religious leader about it and that having tattoos does not violate his beliefs as he understands them. Yet, despite his response, AstraZeneca still denied his exemption with no objective basis for questioning his beliefs.

53.    AstraZeneca did not engage in any sort of interactive process regarding possible accommodations after receipt of Plaintiffs Foshee, Fuller, Pivar, Ruggeri, and Smith's exemption requests. AstraZeneca showed no inclination to provide these Plaintiffs with their requested accommodations and did not discuss alternative accommodations. AstraZeneca did not accept that these Plaintiffs could have a sincere conscientious and religious objection to the vaccine. In fact, in late 2021, AstraZeneca was aware through media reports and its own investigations that approximately 10% of Americans were of the view that the COVID-19 vaccines conflicted with their religious beliefs (*see* NPR, Dec. 9, 2021, https://www.npr.org/2021/12/09/1062655300/survey-religion-vaccine-hesitancy-exemptions).

54.    When Plaintiffs Foshee, Fuller, Pivar, Ruggeri, and Smith filed for a religious exemption, AstraZeneca did not start from the proposition that the employee's religious views were sincerely held unless there was objective evidence to prove otherwise, as required under Title VII.

55.     On or about March 31, 2022, these Plaintiffs received an email from AstraZeneca informing them that their requests to be exempt were denied. The letter said that they were, "among other reasons… not qualified for a reasonable accommodation." AstraZeneca did not elaborate further, nor did it allow them to appeal the decision.  It is believed, and therefore averred, that to the extent AstraZeneca granted any religious exemption requests, it did so arbitrarily.

**D. Plaintiffs' Involuntary Termination of Employment**

56.     On or about April 29, 2022, AstraZeneca terminated Plaintiffs Foshee, Fuller, Pearson, Pivar, Ruggeri, and Smith.  Plaintiffs Miller and Rogers were constructively terminated.

57.     After their terminations, Plaintiffs unjustly suffered economic losses including, but not limited to loss of salary, employment benefits, pension benefits and other perquisites of employment.  Plaintiffs also suffered non-economic injuries such as mental pain and anguish, embarrassment, and humiliation.

58.     AstraZeneca did not offer Plaintiffs a leave of absence, whether paid or unpaid.  At no time since terminating Plaintiffs has AstraZeneca offered to reinstate Plaintiffs.

59.     Since before April 2022, AstraZeneca was aware that vaccination was not the only means by which to mitigate and control the spread of COVID-19. Indeed, by that time, the effectiveness of the vaccines to limit the spread of the

15

disease was largely debunked. Although the science seemed to indicate, at that time, that vaccination may reduce a patient's symptoms from COVID-19, it was well known that the vaccines did not prevent the spread of the disease. Thus, as of April 2022, AstraZeneca was attempting to coerce employees into making a medical decision that was not intended to prevent the spread to others, but rather, was intended to reduce an employee's symptoms if one was to contract the disease. This sort of cost-benefit analysis regarding a proposed medical procedure is not within the purview of an employer to make. It is a medical decision that should, and legally, must, be left to the individual patient, after giving informed consent. At no time did AstraZeneca attempt to engage in informed consent.

**COUNT I**
**RELIGIOUS DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(42 U.S.C. § 2000e *et seq.*)**

60. Plaintiffs incorporate by reference the allegations set forth in the Paragraphs above, as if fully set forth herein.

61. This Count is brought by Plaintiffs Foshee, Fuller, Pivar, Ruggeri, and Smith. They were all "employees" within the meaning of 42 U.S.C. § 2000e(f).

62. AstraZeneca is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

16

63.     Title VII of the Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion." 42 U.S.C. § 2000e-2. Accordingly, an employer must "reasonably accommodate to an employee's or prospective employee's religious observance or practice," absent "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

64.     To establish a prima facie case of an employer's violation of the duty to reasonably accommodate an employee's religious observance or practice, an employee must prove "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (quoting *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008)); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship." *Firestone Fibers & Textiles Co.*, 515 F.3d 307 at 312 (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir.1996)); *McDonnell Douglas*, 411 U.S. 792.

65.    Here, Plaintiffs Foshee, Fuller, Pivar, Ruggeri, and Smith had bona fide religious beliefs that conflicted with AstraZeneca's COVID-19 vaccine mandate.

66.    These Plaintiffs informed AstraZeneca of this belief in his request for religious accommodations, which AstraZeneca then denied.

67.    AstraZeneca terminated these Plaintiffs for not complying with the vaccine mandate.

68.    Plaintiff Foshee described his sincere religious beliefs as a Christian. He also said he is a member of a Baptist Church with a "God-given conscience" and he attested that receiving the COVID-19 vaccine would be in opposition to "direct guidance from God."

69.    Plaintiff Fuller described his sincere religious beliefs as a Catholic.  He requested an accommodation from the vaccine mandate because the COVID-19 vaccines were developed using aborted fetal tissue, which is something he and his religion view as immoral and unethical.

70.    Plaintiff Pivar described his sincere religious beliefs as a born-again Christian who, when in need of guidance, looks to the Holy Spirit to guide him. Pivar said that he has prayed about the issue of whether to receive the COVID-19 vaccine many times and that the Holy Spirit has not compelled him to get vaccinated. Therefore, he must abide by the Holy Spirit's guidance and refrain from vaccination.

18

71.     Plaintiff Ruggeri described her sincere religious beliefs as a Christian. Her belief in the Bible and its description of the body as temple of the Holy Spirit is her reason for needing an accommodation.

72.     Plaintiff Smith described his sincere religious beliefs as a Christian.  He puts his faith in God to protect him from "sickness and hardship."  Therefore, he said, using "manmade immunization shows [a] lack of faith in God and therefore prevents [him] from vaccinating."

73.     As explained above, AstraZeneca was prohibited from questioning the sincerity of an employee's religious beliefs unless it was in possession of objective evidence that called that sincerity into question.  At no time did AstraZeneca have any objective evidence that Plaintiffs Foshee, Fuller, Pivar, Ruggeri, and Smith's stated objections were not sincerely held.  AstraZeneca did not engage in an actual interview with these Plaintiffs.  Instead, AstraZeneca put into question their religious beliefs by denying their beliefs absent undue hardship.  This attempt was unsuccessful in that regard because their beliefs are sincere, but AstraZeneca, nonetheless, imposed its view of morality, theology, ethics, and conscience, and rejected their requested exemptions.

74.     Even if AstraZeneca doubted the sincerity of Plaintiffs Foshee, Fuller, Pivar, Ruggeri, and Smith's religious beliefs, AstraZeneca could have accommodated them without undue hardship by allowing them to wear a face mask,

19

engage in social distancing, and/or undergo testing during any in-person duties. As the EEOC explains, an employer must consider whether the employee "works in a solitary or group setting or has close contact with other employees or members of the public." *See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.    In this case, AstraZeneca failed to consider those factors and, if it had, those factors would have dictated against a vaccine mandate for Plaintiffs.

75.    In processing requests for religious accommodation, an employer should engage in an interactive process: "bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (internal citations and quotations omitted); *see also* U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2021-3, Section 12: Religious Discrimination (2021), https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftn221 ("This typically involves the employer and employee mutually sharing information necessary to process the accommodation request. Employer-employee cooperation and flexibility are key to the search for a reasonable accommodation.  If the accommodation solution is not immediately apparent, the employer should discuss the request with the employee to determine

what accommodations might be effective"). AstraZeneca did not engage in any actual discussion with its employees, including these Plaintiffs, regarding their exemption requests, nor did AstraZeneca discuss any possible accommodation. Therefore, AstraZeneca did not engage in an interactive process with them as defined by the courts and the EEOC. Rather, it imposed its vaccine mandate as a *per se* rule.

76.     As a result of the above-mentioned discrimination, Plaintiffs Foshee, Fuller, Pivar, Ruggeri, and Smith suffered and will continue to suffer lost earnings, earning capacity, fringe benefits, severe emotional distress and mental anguish. AstraZeneca is also liable for punitive damages because its conduct was intentional and malicious.

## COUNT II
### DISABILITY DISCRIMINATION
### UNDER THE AMERICANS WITH DISABILITIES ACT
### (FAILURE TO ACCOMMODATE)
### (42 U.S.C. § 12101 *et seq.*)

77.     Plaintiffs incorporate by reference the allegations set forth in the Paragraphs above, as if fully set forth herein.

78.     This Count is brought by Plaintiff Hammond. He was an "employee" of the AstraZeneca within the meaning of 42 U.S.C. § 12111(4).

79.     AstraZeneca is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

80.     The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") prohibits employers from discriminating "against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a).

81.     One form of discrimination prohibited by the ADA is failing to make "reasonable accommodations" for a disabled employee's "known physical or mental limitations," unless the employer "can demonstrate that the accommodation would impose an undue hardship" on its business. 42 U.S.C. § 12112(b)(5)(A).

82.     To show that an employer has failed to accommodate a plaintiff's disability, "the plaintiff must prove: (1) that she had a disability within the statutory meaning; (2) that the employer knew of her disability; (3) that a reasonable accommodation would permit her to perform the essential functions of the position; and (4) that the employer refused to make the accommodation." *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 767 (2022) (citing *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)). Nevertheless, "even if the plaintiff makes this showing, the employer can still defeat the failure-to-accommodate claim by demonstrating that the reasonable accommodations would impose an undue hardship." *Id.* (citing *US Airways, Inc. v. Barnett*, 535 U.S. 391, 395 (2002)).

83.     Hammond claimed that he had medical conditions that prevent him from being vaccinated against COVID-19, as AstraZeneca required. Hammond

22

requested, as reasonable accommodations, that AstraZeneca exempt them from the vaccine mandate. Hammond could have performed the essential function of his job with such an accommodation. Still, AstraZeneca refused to grant him the accommodation.

84.    Hammond presented a request with a letter from his physician presenting several medical reasons to refrain from vaccination. One reason was related to Hammond's heart condition, which presented concern given the issues with the vaccine causing cardiomyopathy in young men similarly situated to Hammond.

85.    AstraZeneca terminated Hammond for not complying with the vaccine mandate.

86.    AstraZeneca could have reasonably accommodated Hammond by allowing him to wear face masks and/or undergo testing during any in-person duties.

87.    Under the ADA, "[an] employer must engage with the employee "in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Haschmann v. Time Warner Ent. Co.*, 151 F.3d 591, 601 (7th Cir. 1998); *see* also 29 C.F.R. § 1630.2(o)(3); 29 C.F.R. Pt. 1630, App. § 1630.9; U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2003-1, Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA (2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-

accommodation-and-undue-hardship-under-ada ("A request for reasonable accommodation is the first step in an informal, interactive process between the individual and the employer."). AstraZeneca did not engage Hammond in an interactive process.

**COUNT III**
**DISABILITY DISCRIMINATION**
**UNDER THE AMERICANS WITH DISABILITIES ACT**
**(UNLAWFUL MEDICAL EXAMINATION OR INQUIRY)**
**(42 U.S.C. § 12101 *et seq.*)**

88.     All Plaintiffs incorporate by reference the allegations set forth in the Paragraphs above, as if fully set forth herein.

89.     This Count is brought by all Plaintiffs.

90.     The ADA's prohibition on discrimination "include[s] medical examinations and inquiries." 42 U.S.C.A. § 12112(d)(1).  AstraZeneca's demand that employees disclose their medical and COVID-19 vaccination status constitutes a medical examination or inquiry.  The ADA provides that employers "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability… unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C.A. § 12112(d)(4); 29 C.F.R. § 1630.13(b), 14(c).

91.     "Whether a medical inquiry is job-related and consistent with business necessity 'is an objective inquiry.'" *Coffey v. Norfolk S. Ry. Co.,* 23 F.4th 332, 339

(4th Cir. 2022) (quoting *Hannah P. v. Coats,* 916 F.3d 327, 339 (4th Cir. 2019)).  An employer must have an objectively reasonable basis to believe that the employee cannot carry out the employee's duties. *Coffey,* 23 F.4th 332 at 336.  "An employer's request for a medical examination is job-related and consistent with business necessity when: "(1) the employee requests an accommodation; (2) the employee's ability to perform the essential functions of the job is impaired; or (3) the employee poses a direct threat to himself or others." *Coats,* 916 F.3d at 339 (quoting *Kroll v. White Lake Ambulance Auth.,* 763 F.3d 619, 623 (6th Cir. 2014)).  An employer must prove: (i) "that the asserted 'business necessity' is vital to the business," (ii) "that the examination ... genuinely serves the asserted business necessity," and (iii) "that the request is no broader or more intrusive than necessary." *Blake v. Baltimore Cty., Md.,* 662 F. Supp. 2d 417, 422 (D. Md. 2009) (quoting *Conroy v. N.Y. State Dep't of Corr. Serv.,* 333 F.3d 88, 97-98 (2d Cir. 2003); 42 U.S.C. §12112(d)(3)(1994); 29 C.F.R. §1630.14(b)(1998).

92.    Here, AstraZeneca made medical inquiries and required Plaintiffs to undergo a medical examination when it mandated that they receive the COVID-19 vaccination as a condition of his employment. AstraZeneca further made a medical examination or inquiry when, in connection with its vaccine mandate, it inquired into Plaintiffs' vaccination status and required them to upload proof that they had been vaccinated.

93.     Plaintiffs' ability to perform the essential functions of his job was not impaired by their status as unvaccinated.  There was no objectively reasonable basis for AstraZeneca to believe that Plaintiffs were unable to carry out the essential functions of their job.  Plaintiffs were willing to wear face masks, socially distance, and/or submit to regular testing when in contact with others as part of their job duties.  With these precautions in place, they could safely perform their job functions as they had been doing for the prior two years.

94.     COVID-19 is not an occupational hazard that has any particular relationship to Plaintiffs' job duties.  Rather, it is a disease or medical condition that arises as a result of living in the 21st century, not unlike other communicable diseases such as the flu, the common cold, HIV, and leprosy.  As the U.S. Supreme Court explains:

> That is not to say OSHA lacks authority to regulate occupation-specific risks related to COVID–19. Where the virus poses a special danger because of the particular features of an employee's job or workplace, targeted regulations are plainly permissible. We do not doubt, for example, that OSHA could regulate researchers who work with the COVID–19 virus. So too could OSHA regulate risks associated with working in particularly crowded or cramped environments. But the danger present in such workplaces differs in both degree and kind from the everyday risk of contracting COVID–19 that all face. OSHA's indiscriminate approach fails to account for this crucial distinction— between occupational risk and risk more generally—and accordingly the mandate takes on the character of a general public health measure, rather than an "*occupational* safety or health standard." 29 U.S.C. § 655(b) (emphasis added).

26

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.,* 142 S. Ct. 661, 665–66 (2022).  Due to the nature of Plaintiffs' jobs, they had no greater chance of spreading COVID-19 than the general public.  Their job duties did not bring them into contact with immunocompromised medical patients, as might be the case with nurses and doctors, or otherwise involve a higher risk of spreading the disease than might exist in the general public.

95.  Plaintiffs did not pose a direct threat to the public or their co-workers. In the context of reasonable accommodation, "[d]irect [t]hreat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation."  29 C.F.R. § 1630.2(r). The determination … shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job" and "a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." *Id.* "In determining whether an individual would pose a direct threat, the factors to be considered include: (1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The likelihood that the potential harm will occur; and (4) The imminence of the potential harm." *Id.*

96.     AstraZeneca allowed Plaintiffs to maintain employment from March 2020 until the date of their terminations or constructive terminations.  At no point did AstraZeneca inform Plaintiffs that they posed a direct threat to the public or their co-workers.  AstraZeneca found ways to mitigate against the threat posed by COVID-19, such as mask policies, social distancing, testing, and remote work. Plaintiffs did not present a direct threat in failing to comply with AstraZeneca's vaccine policies and AstraZeneca certainly could have continued the mitigation measures it and many other employers had previously employed.  AstraZeneca bears the burden of proving that Plaintiffs posed a "direct threat" and cannot meet that burden, especially in light of the fact that it used Plaintiffs' services for at least two years when they were not vaccinated.  Nothing changed in April 2022 to indicate that Plaintiffs were posing a greater threat to others than during the prior two years. Indeed, by this time, AstraZeneca was aware that vaccination did not prevent the spread of the disease and that disease-acquired immunity was at least as effective as vaccination.

97.     As a result of the above-mentioned discrimination, Plaintiffs suffered and will continue to suffer lost earnings, earning capacity, fringe benefits, severe emotional distress, and mental anguish.  AstraZeneca is also liable for punitive damages because its conduct was intentional and malicious.

**COUNT IV**

28

## DISABILITY DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT
## (REGARDED AS DISABLED)
## (42 U.S.C. § 12101 *et seq.*)

98.     Plaintiffs incorporate by reference the allegations set forth in the Paragraphs above, as if fully set forth herein.

99.     This Count is brought by Plaintiffs Foshee, Fuller, Miller, Pearson, Pivar, Rogers, Ruggeri, and Smith.

100.    Under the 2008 amendments to the ADA, an individual is "regarded as" disabled when she is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity.  42 U.S.C. § 12102(3)(A).  An individual cannot be "regarded as having such an impairment," however, if the impairment is "transitory and minor."  *Id.* § 12102(3)(B).  "A transitory impairment is an impairment with an actual or expected duration of 6 months or less."  *Id.*  Thus, "an employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor."  *EEOC v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019).  "Importantly, what matters for the 'regarded as' theory is whether the [employer] perceived [the plaintiff] as impaired, not whether he was actually impaired."  *Forsyth v. Univ. of Alabama, Bd. of Trustees*, No. 20-12513, 2021 WL 4075728, at *4 (11th Cir. Sept. 8, 2021).  This "more liberal standard" makes "it

significantly easier for a plaintiff to show disability." *Coker v. Enhanced Senior Living, Inc.*, 897 F.Supp.2d 1366, 1374 (N.D. Ga. 2012) (quoting *Barlow v. Walgreen Co.*, No. 8:11–cv–71–T–30EAJ, 2012 WL 868807, at *4 (M.D.Fla. Mar. 14, 2012)).

101.   At the time that Plaintiffs Foshee, Fuller, Miller, Pearson, Pivar, Rogers, Ruggeri, and Smith were terminated or constructively terminated, AstraZeneca regarded them as disabled because they had the medical status of being unvaccinated. This condition was neither transitory nor minor.   At one time, limitations had been placed on unvaccinated individuals that limited one or more of life's major activities.   Unvaccinated individuals were:

a.   prohibited from going into many private and public buildings,

b.   barred from restaurants and bars,

c.   prohibited from working in medical facilities such as hospitals, fire departments, doctor's offices, etc.,

d.   required for periods of time to "shelter in place,"

e.   required to remain distanced from other people,

f.   required to refrain from attending any sort of gathering of people,

g.   required to avoid going to parties, meetings, church services, etc.,

h.   prohibited from worshiping God in their usual manner, such as attending church, synagogue, mosques, and temples,

i.   prohibited from playing sports, even sports such as tennis, that implicitly required social distancing,

j.   attending in person governmental meetings such as school board meetings, legislative sessions, court proceedings, etc.

k.   required by many business establishments to prove that they were vaccinated before obtaining services from such establishments,

l.   prohibited from flying on commercial airlines.

102.   AstraZeneca terminated Plaintiffs Foshee, Fuller, Miller, Pearson, Pivar, Rogers, Ruggeri, and Smith's employment because it regarded them as disabled. They were "regarded as" disabled by AstraZeneca due to their status as unvaccinated.   42 U.S.C. § 12102(3).   AstraZeneca considered vaccinated employees "clean" and unvaccinated employees "unclean."   AstraZeneca also regarded unvaccinated employees as "disabled."

103.   The assumptions made by AstraZeneca regarding these Plaintiffs' unvaccinated status were not based on any reasonable understanding of the facts regarding their ability to perform the essential functions of their positions. AstraZeneca regarded them as unable to perform the essential functions of their positions solely because they were unvaccinated.   However, Plaintiffs Foshee, Fuller, Miller, Pearson, Pivar, Rogers, Ruggeri, and Smith had demonstrated their ability to perform the essential functions of their position, with or without

31

accommodations.    Assuming for the sake of argument that they required accommodations, those accommodations were the same accommodations that had been granted them for the prior two years and they were able to perform the essential functions of their positions during that time.

104.  Despite their ability to do their jobs, with or without reasonable accommodations, AstraZeneca terminated them because AstraZeneca regarded these Plaintiffs as disabled.

105.  As a result of the above-mentioned discrimination, Plaintiffs Foshee, Fuller, Miller, Pearson, Pivar, Rogers, Ruggeri, and Smith suffered and will continue to suffer lost earnings, earning capacity, fringe benefits, severe emotional distress and mental anguish.  AstraZeneca is also liable for punitive damages because its conduct was intentional and malicious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests relief as follows:

a.     For Plaintiffs Foshee, Fuller, Hammond, Miller, Pearson, Pivar, Rogers, Ruggeri, and Smith to be reinstated to their position or a similar one and receive all economic losses resulting from the unlawful termination, including but not limited to back pay, liquidated damages, front pay, reinstatement of accrued benefits including but not limited to sick pay, pension accrual, vacation pay, FICA contributions and other employment benefits, in an amount that exceeds $75,000.

b.    For AstraZeneca to be enjoined from further illegal discriminatory acts against Plaintiffs.

c.    For Plaintiffs' other non-economic and economic losses both retrospective and prospective as proved at trial including, but not limited to, damages resulting from mental anguish and economic hardship of an amount more than $75,000.

d.    For punitive damages in excess of $75,000,

e.    For the cost of this suit and reasonable attorney's fees, including under Title VII and 42 U.S.C. § 1988; and

f.    For other and further relief as may be requisite.

Respectfully submitted,

**KAHN, SMITH & COLLINS, P.A.**

By: _____
Francis J. Collins, Esq.
CPF ID No. 8501010118
Fed Ct. # 04272
fjcollins@kahnsmith.com
201 N. Charles Street, Tenth Floor
Baltimore, Maryland 21201
(410) 244-1010 (telephone)
(410) 244-8001 (fax)

## PRAYER FOR JURY TRIAL

Plaintiffs Foshee, Fuller, Hammond, Miller, Pearson, Pivar, Rogers, Ruggeri, and Smith, by and through their attorneys, Francis J. Collins and Kahn, Smith and Collins, P.A., prays to have this case tried by jury.

_____

Francis J. Collins, Esq.