## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TYSON FOSHEE, *et al.,*            *

                               *

           **Plaintiffs,**            *

**v.**            *            **Civil No. SAG-23-00894**

                               *

**ASTRAZENECA**            *
**PHARMACEUTICALS LP,**

                               *

           **Defendant.**            *

                               *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Nine individuals (collectively "Plaintiffs") filed a Complaint against their former employer, AstraZeneca Pharmaceuticals LP ("AstraZeneca"), alleging religious discrimination and violations of the Americans with Disabilities Act ("ADA"). ECF 1. AstraZeneca has filed a Motion to Dismiss some portions of Plaintiffs' Complaint for failure to state a claim. ECF 27. This Court has reviewed that motion, along with the opposition and reply.[1] ECF 31,40. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, this Court will grant the motion.

---

[1] This Court has cursorily reviewed, but will not consider, the parties' filings at ECF 32, 33, 39, 41, and 42. While several of these filings were captioned as some form of "Notice of Supplemental Authority," they do not serve the purpose of providing the Court with a new judicial opinion issued after the parties' briefing concluded. Instead, the filings constitute surreplies, which are not permitted under this Court's rules absent leave of court. *See* Loc. R. 105.2 (D. Md. 2023).

## I.   FACTUAL BACKGROUND

The facts contained herein are derived from Plaintiffs' Complaint and taken in the light most favorable to Plaintiffs as the non-moving party. Plaintiffs are Tyson Foshee, Anthony Fuller, Nathan Hammond, Paul Miller, Gary Pearson, Nicholas Pivar, Robert Rogers, Diana Ruggeri, and Mark Smith. They all worked at AstraZeneca, in various roles, as of August 2021. ECF 1 ¶¶ 2–10. In August, 2021, AstraZeneca emailed its employees to announce a company-wide COVID-vaccine mandate. *Id.* ¶ 11. The email stated that accommodations would be afforded "for employees unable to be vaccinated for medical, religious, or other restrictions," though the employees would be required to undergo weekly COVID testing. *Id.* Beginning in 2022, however, AstraZeneca required its employees to submit written proof of (1) vaccination or (2) a necessary medical or religious exemption. *Id.* ¶ 12.

Some of the Plaintiffs asked for medical or religious exemptions, while others simply declined to comply with the requirement. Relevant to this motion, in February, 2022, Foshee requested a religious exemption from the vaccination requirement, using AstraZeneca's Religious Reasonable Accommodation Request Form. *Id.* ¶¶ 13, 47. On the form, when asked for the nature of his objections to the vaccine requirement, Foshee wrote, "There is simply not enough data to support the claim that the vaccine is effective. Vaccinated individual [sic] continue to become sick and spread the virus, just as much, of [sic] not more so than unvaccinated individuals. My conscience simply guides me to rely on my God-given immunity." ECF 27-2 at 6. When asked the basis for his sincerely held religious belief requiring accommodation, Foshee wrote, "I believe, as previously stated, that the God who created me, created me with a conscience. He endowed me with certain inalienable rights as a human being to be guided by that conscience to choose right from wrong and good from evil. He has given it to me to know whether something is illegitimate, or legitimate. . . . In effect, bucking against my conscience whereas I have direct guidance from

2

God (in the Person of the Holy Spirit) I would be placing myself in opposition to what He would have me do. I am not being led by Him to get this vaccine in any capacity, and if I were to sense that He wanted me to, I would." *Id.* at 6. Foshee attached a letter from his pastor, of the Baker Heights Baptist Church in Martinsburg, West Virginia. *Id.* at 4. The pastor says, "Baker Heights Baptist Church does not have an official policy concerning receiving vaccinations. However, many people in our congregation have received the coronavirus vaccinations, myself included." *Id.* at 4. He goes on to discuss the importance of having a clear conscience and to urge a religious exemption for Foshee so that he can abide by his conscience. *Id.* at 4–5.

Pivar also filed a Religious Reasonable Accommodation Request Form in February, 2022. ECF 1 ¶ 47; ECF 27-3. When asked the nature of his objection to the vaccination requirement, Pivar responded in relevant part, "I do not feel that I need protection from [COVID-19] due to my strong immune system, current good health and age. I have zero risk factors for serious complications and feel that the risk of the possible/known side effects that have been seen from getting this vaccination far outweigh any benefit that it would be to my health. This vaccine is, in my opinion, not a traditional vaccine in the technology that it uses and as such, the long-term effects are still unknown and will be unknown for quite some time. Basically, I do not trust this vaccine in the long-term because there is no data to support such trust as of this time." ECF 27-3 at 6. When asked the basis of his sincerely held religious belief requiring accommodation, Pivar described his practice of being guided by the Holy Spirit on important issues and stated, "I have prayed this out with the Lord on many occasions and have been patiently waiting for the spirit to guide me on this issue. As of this time, I have absolutely felt nothing that leads me to believe that I should be getting this vaccine against my personal wishes in accordance with God's will. . . . In closing, if I were to go get vaccinated right now, knowing what I know and feeling what I feel, I would be knowingly going against what I feel from the guidance of the Holy Spirit. This would be

in direct contrast to the Lord's current will for me and thus goes against everything that I believe in as a born again, saved Christian." *Id.* at 6–7.

AstraZeneca followed up with both Foshee and Pivar regarding their religious beliefs. ECF 1 ¶¶ 50, 51. Foshee provided no additional information and simply attached a second copy of his request. *Id.* ¶ 50. Pivar provided additional detail. *Id.* ¶ 51. On or about March 31, 2022, AstraZeneca emailed both plaintiffs that their exemption requests were denied, stating that they were, "among other reasons . . . not qualified for a reasonable accommodation." *Id.* ¶ 55. AstraZeneca provided no further elaboration or opportunity to appeal. *Id.* Instead, AstraZeneca terminated all the Plaintiffs' employment on April 29, 2022.[2] *Id.* ¶ 56.

Plaintiffs timely filed charges with the Equal Employment Opportunity Commission ("EEOC") and received right to sue letters. *Id.* ¶¶ 22–42. This lawsuit ensued.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

---

[2] The Complaint alleges that two of the Plaintiffs, Miller and Rogers, were constructively terminated. ECF 1 ¶ 56. Because Miller and Rogers are only plaintiffs as to Counts III and IV, which are being dismissed, the issue of their constructive termination need not be reached.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]" (quotation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440

(4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Here, AstraZeneca attached Foshee's and Pivar's Religious Reasonable Accommodation Request Forms to its motion. ECF 27-2, 27-3. AstraZeneca notes that the forms are incorporated into Plaintiffs' Complaint by repeated reference. *See, e.g.*, ECF 1 ¶¶ 13, 47. Federal courts may consider documents incorporated into a complaint by reference without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Specifically, the Court may consider documents attached to motions to dismiss as long as they are "integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, Plaintiffs have not contested the authenticity of the Accommodation Request Forms. In fact, they refer to them and paraphrase them in the Complaint as the premise for their religious discrimination claims. ECF 1 ¶¶ 47, 68, 70. The forms and their contents can therefore be properly considered at the motion to dismiss stage, without converting this motion into one for summary judgment.

## III.  ANALYSIS

### A.  Religious Discrimination (Count One)

Some of the Plaintiffs claim religious discrimination pursuant to Title VII of the Civil Rights Act of 1964 because AstraZeneca failed to accommodate their religious objections to vaccination. AstraZeneca seeks to dismiss those claims brought by Foshee and Pivar. The elements of such a claim require a plaintiff to plead facts plausibly suggesting "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (quoting *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)); *see also Booth v. State of Maryland*, 337 F. App'x 301, 308–09 (4th Cir. 2009). While Plaintiffs' Complaint asserts that Foshee and Pivar "sought reasonable accommodations of their religious practices," ECF 1 ¶ 13, it alleges no specific facts regarding the nature of Foshee's assertions, only detailing questions posed to Foshee by AstraZeneca. ECF 1 ¶ 50. As to Pivar, the Complaint alleges that he explained "in great detail the core of his beliefs and his intimate relationship with the Holy Spirit, including how it guides his decision-making." *Id.* ¶ 51.

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court accepts a plaintiff's well-pleaded allegations as true except where they are contradicted by an exhibit. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Here, as noted above, this Court can consider the accommodation forms submitted by Foshee and Pivar to ascertain the nature of their requests. Both Foshee and Pivar made similar assertions – that they are guided in their important decisions by God or the Holy Spirit, respectively, that they personally do not see the value in and are concerned about the risks associated with the COVID-19 vaccines, and that they have not felt God or the Holy Spirit calling them to disregard their consciences and get the vaccine.

The issue presented is not, as Plaintiffs assert, the sincerity of their religious beliefs. That question would be one for the finder of fact and would not be amenable to disposition on a motion to dismiss. *See E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) (noting that sincerity is a credibility issue ordinarily reserved for the factfinder at trial). This Court assumes the sincerity of Foshee's and Pivar's asserted beliefs in adjudicating this motion. Instead, the question presented is one recognized as challenging for courts: determining whether Plaintiffs' beliefs fall on the religious or secular side of the line. *See Frazee v. Illinois Emp. Security Dept.,* 489 U.S. 829, 833 (1989) (recognizing "the difficulty of distinguishing between religious and secular convictions"). As the Fourth Circuit has noted, "the same belief may be sincerely held by some as a religious belief and . . . sincerely held by others as a simple matter of secular preference." *Doswell v. Smith,* No. 94-CV-06780, 139 F.3d 888 (4th Cir. 1998); *see also Dachman v. Shalala,* 9 F. App'x 186, 191–93 (4th Cir. 2003) (implying that an employer must accommodate a plaintiff seeking a day off to observe the sabbath but not one requesting the same day off to perform chores). In drawing the line between the two categories of reasons for seeking accommodation, courts have considered such factors as whether the beliefs the employee cites "address[ ] fundamental and ultimate questions having to do with deep and imponderable matters," are "comprehensive in nature," and are accompanied by "certain formal and external signs." *Africa v. Pennsylvania,* 662 F.2d 1025, 1032 (3d Cir. 1981).

Because religious beliefs are individual in nature, it is not essential that the beliefs be shared by an organized religious group to qualify as religious in nature. *See Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.,* 450 U.S. 707, 715–16 (1981) (explaining that "the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"). Of course, though, such widespread adoption by a religious community could be among the "formal and external signs" marking a religious belief. Here, neither Foshee nor Pivar shares that type of

evidentiary support, given that their pastors do not evidence widespread opposition to vaccines within their congregations for religious reasons.

Ultimately, beliefs amounting to a declaration that an employee has the right to make unilateral decisions do not constitute religious beliefs, even where religion is expressly invoked in communicating the beliefs. *See, e.g.*, *Ellison v. Inova Health Care Servs.*, No. 23-CV-00132, 2023 WL 6038016, at *5 (E.D. Va. Sept. 14, 2023) ("Jenkins's belief that if, after his prayer, 'God answers and interdicts [his] participation,' amounts to the type of 'blanket privilege' that undermines our system of ordered liberty.") (internal citations omitted); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (granting motion to dismiss a religious accommodation claim based on Plaintiff's assertion of a "God given right to make her own choices" since such a position, if deemed a bona fide religious belief "would amount to a blanket privilege and a limitless excuse for avoiding all unwanted obligations" (cleaned up)); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 200 F. Supp. 3d 553, 560–61 (E.D. Pa. 2016), *aff'd*, 877 F.3d 487 (3d Cir. 2017) (rejecting assertions that an objection to vaccination based on safety and efficacy concerns, along with a contention that consenting to vaccination would violate his conscience about right and wrong, amounted to religious beliefs). The reasons proffered by both Foshee and Pivar fall within this category. Foshee's position, that God gave him a conscience that tells him what to do, similarly amounts to a "blanket privilege." The same conscience-based justification could be used to evade any job requirement that Foshee disagreed with.[3] Pivar's position that he listens to the guidance of the Holy Spirit which guides him in his difficult decisions is in the same vein.

---

[3] For example, a hypothetical plaintiff could assert, despite his shift starting at 8, that his God-given conscience or the Holy Spirit told him to rest and not start work until 10:30. Mandating that such assertions be accommodated as religious in nature would entirely frustrate an employer's ability to maintain an orderly workplace.

Plaintiffs attempt to analogize this case to another case in which the court refused to dismiss religious discrimination claims. *See Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-1585, 2023 WL 253580 (S.D.N.Y. Jan. 18, 2023). But the complaint in *Gardner-Alfred* offered markedly different facts than the complaint here. One plaintiff in *Gardner-Alfred* was a member of the "Temple of Healing Spirit," which believed in "holistic approaches to health" and "oppose[d] the invasive techniques of traditional medicine." *Id.* at *19. Another plaintiff was a baptized Catholic who believed that it was her religious duty to refuse vaccines that were "created using human cell lines derived from abortion." *Id.* Both plaintiffs therefore sufficiently alleged a nexus "between [their] objection to immunization and their own religious beliefs." *Id.* By contrast, Foshee and Pivar do not specify a nexus, instead simply relying on their "God-given" conscience to support their objections to the COVID-19 vaccine.

Foshee and Pivar have cited secular reasons they oppose taking the vaccine (their doubts about its safety, efficacy, and necessity), combining those reasons with the reasons they assert as religion-based. Of course, harboring secular reasons alongside religious reasons does not automatically disqualify the religious beliefs, but in this circumstance, the reasons are inextricably intertwined in a way that dilutes the religious nature. For example, plaintiffs do not want to take the vaccines, therefore their consciences tell them not to do it, and they believe it is God's will or in accord with the Holy Spirit that they follow their consciences. That reasoning is not subject to any principled limitation in its scope. Their beliefs thus confer the type of unverifiable "blanket privilege" that courts cannot permit to be couched as religious in nature. The Count I claims brought by Foshee and Pivar will therefore be dismissed.

**B.  ADA Claims**

**1.  "Regarded as Disabled" Claim (Count Four)**

Plaintiffs' Complaint contains three claims for violation of the ADA, brought by some or all of the Plaintiffs. AstraZeneca seeks to dismiss two of those claims, those brought in Counts III and IV. Initially, as to Count IV, this Court must address a threshold issue: Do Plaintiffs qualify for the ADA's protections?

The ADA protects qualified individuals with a disability. "An individual is disabled under the ADA . . . if he or she: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Davis v. University of North Carolina*, 263 F.3d 95, 99 (4th Cir. 2001) (citations omitted); *see also* 42 U.S.C. § 12102(1). "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Examples of "major life activities" include "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." *Id.* § 1630.2(i)(1)(i). Ultimately, "[t]he determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case." *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001) (citations omitted).

Foshee, Fuller, Miller, Pearson, Pivar, Rogers, Ruggeri, and Smith ("the Regarded As Plaintiffs") assert in Count IV that AstraZeneca regarded them as having a disabling condition "because they had the medical status of being unvaccinated." ECF 1 ¶ 101. That position is unavailing. Initially, the Regarded As Plaintiffs have not alleged facts showing they were regarded as having any physical or mental impairment that substantially limits a major life activity. The

Regarded As Plaintiffs suggest that society has imposed limitations on the major life activities of unvaccinated individuals by prohibiting them from entering certain facilities and participating in social events. *Id.* But any such limitations are caused by societal rules, not by the vaccination status of those subject to those rules. Vaccination status itself poses no hindrance to the performance of any tasks. *Jorgenson v. Conduent Transp. Sols., Inc.*, No. 22-CV-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023). And vaccination status stems from a personal choice, not from a physical or mental impairment. *See, e.g.*, *Speaks v. Health Sys. Mgmt. Inc.*, No. 22-CV-00077, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) (noting that refusing to get an employer-mandated vaccine reflects a personal choice and is not an "'impairment' of any sort"); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-02936, 2023 WL 2163774, at *6 (E.D.N.Y. Feb. 22, 2023) ("The decision to vaccinate or not to vaccinate is a personal choice, while a disability under the ADA is not something a person chooses.").

Further, the Regarded As Plaintiffs have alleged no facts indicating that AstraZeneca classified them or regarded them as having any impairment that limits a major life activity. Merely requiring the Regarded As Plaintiffs to follow a COVID-19 policy applicable to all employees does not support the inference that AstraZeneca classified them as disabled under the ADA. *See Speaks*, 2022 WL 3448649, at *5 (rejecting claim that defendant classified plaintiff as impaired under the ADA by requiring her to comply with a mandatory COVID-19 vaccination policy, because plaintiff's position "would mean that [defendant] considered all its employees to have an 'impairment,' which is of course not a plausible inference"). AstraZeneca's decision to protect its workplace by requiring vaccination does not plausibly reflect a determination or belief that any of its employees are disabled or impaired. *See id.*; *Jorgenson*, 2023 WL 1472022, at *4.

### 2.   Medical Examination or Inquiry Claim (Count Three)

All Plaintiffs bring an ADA claim in Count Three, citing the ADA subsections relating to medical examinations and inquiries. Specifically, 42 U.S.C. § 12112(d)(4)(A) and 29 C.F.R. § 1630.13(b) prohibit an employer from requiring a medical examination or making inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity. AstraZeneca's inquiry about vaccination status, however, did not constitute a medical examination or an inquiry about a disability or disabling condition. As noted above, both vaccinated and unvaccinated people are able to perform their work and engage in major life activities without impairment or limitation. Thus, an inquiry about vaccination status does not implicate any disability. *See Jorgenson*, 2023 WL 1472022, *5 (rejecting claim that requiring employees to disclose their COVID-19 vaccination status violated Part 1630.13(b), because that requirement "did not constitute a medical examination or inquiry about a disability or disabling condition"). The EEOC agrees with this analysis in its guidance:

> When an employer asks employees whether they obtained a COVID-19 vaccination, the employer is not asking the employee a question that is likely to disclose the existence of a disability; there are many reasons an employee may not show documentation or other confirmation of vaccination besides having a disability. Therefore, requesting documentation or other confirmation of vaccination is not a disability-related inquiry under the ADA, and the ADA's rules about making such inquiries do not apply.

EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, at K.9, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K; *see also id.* at K.1 ("[T]he EEO laws do not prevent employers from requiring documentation or other confirmation that employees are up to date on their vaccinations."). The ADA subsections and cases cited by Plaintiffs, then, are inapposite and Count Three will also be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, AstraZeneca's Motion to Dismiss, ECF 27, will be GRANTED. Counts III and IV will be dismissed, as will the claims asserted in Count I by Foshee and Pivar. The case will proceed as to the Count I claims by Fuller, Ruggeri, and Smith and the Count II claim by Hammond. A separate Order follows.


Dated: October 17, 2023                                    _____/s/_____

Stephanie A. Gallagher
United States District Judge